UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANGELO CHANDLER,

       Petitioner,

                                File No. 2:12-cv-411

v.

                                HON. ROBERT HOLMES BELL

DUNCAN MACLAREN,

       Respondent.
                              /

## MEMORANDUM OPINION AND ORDER

On October 29, 2012, Petitioner Angelo Chandler filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) On August 27, 2015, United States Magistrate Judge Timothy P. Greeley issued a Report & Recommendation ("R&R") (ECF No. 47), recommending that Petitioner's claims be dismissed with prejudice. The magistrate judge further recommended that a certificate of appealability be denied. On September 14, 2015, Petitioner filed objections to the R&R. (ECF No. 48.)

The Court is required to make a de novo determination of those portions of the R&R to which specific objection has been made, and may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

I.

Petitioner filed this petition for writ of habeas corpus challenging his jury conviction for possession with intent to deliver 50 grams or more, but less than 450 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iii); felon in possession of a firearm, Mich. Comp. Laws § 750.224f; felony-firearm, Mich. Comp. Laws § 750.227b; and domestic violence, Mich. Comp. Laws § 750.81(2). He was sentenced "as a habitual offender, second offense, Mich. Comp. Laws § 769.10, to 17 to 30 years' imprisonment for his possession with intent to deliver conviction, 1 to 7 ½ years' imprisonment for his felon in possession of a firearm conviction, two years' imprisonment for his felony-firearm conviction and credit for time served for his domestic violence conviction." *People v. Chandler*, No. 281763, 2009 WL 681895 (Mich. Ct. App. Mar. 17, 2009).

The magistrate judge recommended dismissing Petitioner's petition for writ of habeas corpus. Petitioner has raised five objections the R&R:

I. Petitioner objects to the R&R's conclusion that he procedurally defaulted his claim that drug profile evidence was improperly admitted because, contrary to the R&R's assertion, the record indicates that Petitioner did object to the introduction of this testimony at trial.

II. Petitioner objects to the R&R's conclusion that the Michigan Court of Appeals' decision regarding an improper jury instruction "did not result in a decision that was contrary to, or involve[] an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."

III. "The fact that Petitioner's name was not on the lease of the home the drugs were found in, nor on his person there was no evidence to convict Petitioner

          and the profile evidence was used as evidence of guilt causing extreme prejudice [sic]."

IV.    "In short, the trial court failed to instruct the jury on how it was to consider this evidence. The jury considered it as evidence, and during closing arguments the state instructed the jury to 'think about the expert [witness'] testimony when deciding the case[.] This clearly demonstrates a violation of due process."

V.    "Petitioner also objects to 404(b) evidence of a drug case when someone testifies that the Defendant use[d] to sell them drugs. 'Unfair.'"

(Objections 1-2, ECF No. 48.)

## II.

The majority of Petitioner's objections relate to the "drug profile evidence" that was admitted at trial.

Drug profile evidence is "an 'informal compilation of characteristics often displayed by those trafficking in drugs.'" *People v. Murray*, 593 N.W.2d 690, 693 (Mich. Ct. App. 1999) (quoting *People v. Hubbard*, 530 N.W.2d 130 (1995)). It is "essentially a compilation of otherwise innocuous characteristics that many drug dealers exhibit, such as the use of pagers, the carrying of large amounts of cash, and the possession of razor blades and lighters in order to package crack cocaine for sale." *Id.* (citations omitted). Because "these characteristics may not necessarily be connected to or inherently part of the drug trade," they "could apply equally to innocent individuals as well as to drug dealers." *Id.* Thus, there is a concern that the admission of this evidence can lead to the conviction of innocent persons. Accordingly, "when the testimony at issue is a drug profile, the expert may not move beyond an explanation of the typical characteristics of

drug dealing–in an effort to provide context for the jury in assessing an alleged episode of drug dealing–and opine that the defendant is guilty merely because he fits the drug profile. Such testimony is inherently prejudicial and constitutes an inappropriate use of the profile as substantive evidence of guilt." *Id.*

Michigan courts have explicitly "held that a prosecutor may use expert testimony from police officers to aid the jury in understanding evidence in controlled substance cases." *Id.* (citing *People v. Ray*, 479 N.W.2d 1 (Mich. Ct. App. 1991)). In order for this testimony to be admissible, three requirements must be met: "(1) the expert must be qualified; (2) the evidence must serve to give the trier of fact a better understanding of the evidence or assist in determining a fact in issue; and (3) the evidence must be from a recognized discipline." *People v. Williams*, 499 N.W.2d 404, 407 (Mich. Ct. App. 1993).

On the second day of Petitioner's jury trial, Sergeant Tim Lewkowski was called to testify. (Jury Trial Tr. II at 70, ECF No. 29.) Sergeant Lewkowski was a member of the West Michigan Enforcement Team, which was the task force responsible for drug investigations in Muskegon County. He was called to testify as an expert witness in the area of narcotics, drug trafficking, and drug enforcement. (*Id.* at 74.) After admitting Lewkowski as an expert, the trial judge cautioned the prosecutor "to be very careful" when discussing drug profile evidence. In response, the prosecutor stated:

> Judge, in all my, I guess years of using drug experts, I never engaged in drug profiling. I ask very general questions and I never relate back to the specific facts of a particular case I'm trying. I agree with the Court that an expert is an educational tool only. That's kind of how I tailor my questions.

(*Id.* at 76.) The prosecutor informed the jury of Lewkowski's purpose in testifying: "He is going to come in here and testify as an expert in the underworld of cocaine trafficking . . . He's going to tell you certain aspects of what goes on. What he's seen in his experience working undercover, working with confidential informants . . . it's put in place to educate you as to what goes on in this underworld." (Jury Trial Tr. I at 113, ECF No. 28.) The prosecutor asked Lewkowski questions such as: "Typically, how have you seen cocaine sold?"; "Describe a couple street terms, what's an eight ball?"; "And typically, sir, how much does an ounce [of cocaine] sell for on the street?"; "Have you ever seen anybody write a check for drugs, typically?"; "Now, do guns play another role from your experience?"; "What's going on here in Muskegon [with respect to cocaine dealing]?"; "So is it safe to say [that] drug trafficking is going on here in Muskegon?"; "Talk to me about what the term hold house means to you?"; "Typically, or in your experience sir, in dealing with hold houses, is it a location where the person knows somebody, or is it just random?"; and "How easy or difficult is it to obtain prints from plastic bags?" (Jury Trial Tr. II at 78-87.)

**A. Procedural Default**

Petitioner's first objection to the R&R is that he did not procedurally default his claim that drug profile evidence was improperly admitted. The R&R states that "Petitioner procedurally defaulted this issue by failing to make an objection to the evidence at trial." (R&R 7, ECF No. 47.) The Michigan Court of Appeals reviewed Petitioner's argument that the drug profile evidence was improperly used as substantive

evidence of guilt for "plain error" because it was "unpreserved." *Chandler*, 2009 WL 691895, at *2.

At trial, Petitioner objected to Sergeant Lewkowksi testifying because "we don't believe anyone can be qualified as an expert in this area because to my knowledge this area has never been subjected to the rigors of scientific analysis and verification that any opinions have any basis in fact." (Jury Trial Tr. II at 74.) The trial judge found that police officers are able "to testify as an expert witness in narcotics, trafficking and enforcement," and that the testimony was admissible under Michigan Rule of Evidence 702. (*Id.* at 75.) After qualifying Lewkowski as an expert, no objection was made to the line of questioning pursued by the prosecutor. Petitioner never argued that the questions were being used as substantive evidence of guilt. Accordingly, this objection is meritless.

Even if Petitioner had objected on this ground, it would not affect the Court's decision. "Any review of habeas due process claims based on improper admission of evidence must be cognizant of the Supreme Court's mandate that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) (quoting *Estelle v. McGuire*, 502 U.S. 62, 68 (1991)). This is a "very deferential standard," warranting habeas relief only if "the evidentiary ruling is 'so egregious that it results in a denial of fundamental fairness.'" *Id.* (quoting *Bugh v. Mitchell*, 392 F.3d 496, 512 (6th Cir. 2003)). "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Brown v.*

*O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000).

After reviewing the line of questioning by the prosecution and the answers provided by Sergeant Lewkowski, the Court cannot say that the admission of the testimony was "so egregious that it result[ed] in a denial of fundamental fairness." Sergeant Lewkowski never mentioned any facts in the case, never mentioned Petitioner's name, and never opined as to whether he believed Petitioner was guilty. He simply provided background information, based on his years of experience, on the details of cocaine trafficking. Such testimony is permissible under Michigan law, and its admission did not deprive Petitioner of due process. *See Murray*, 593 N.W.2d at 693.

**B. Jury Instructions**

Objections two and four both pertain to the trial court's failure to instruct the jury that it could not use the drug profile testimony as substantive evidence of guilt. When addressing this issue, the Michigan Court of Appeals stated:

> [A]lthough the trial court failed to give a proper limiting instruction regarding the proper use of the expert evidence, reversal is not necessary because defendant does not explain how the trial court's failure to properly instruct the jury was outcome determinative, and such a conclusion is not supported by the record, particularly given that the prosecutor never argued that defendant's guilt could be inferred from the expert evidence alone.

*Chandler*, 2009 WL 691895, at *2. This Court agrees.

When addressing objections regarding improper jury instructions on habeas review, the Court examines "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141,

147 (1973). Proving that a jury instruction was "undesirable, erroneous, or even 'universally condemned'" is not sufficient. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Rather, Petitioner must show that the instruction violated a right guaranteed to him by the Fourteenth Amendment. *Id.* A petitioner's burden of proving this is "especially heavy" when the claim of prejudice is based on "an omission, or an incomplete instruction," as opposed to "a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Even if Sergeant Lewkowski had not testified, sufficient evidence was before the jury to reach a guilty verdict. And as mentioned, at no time during Sergeant Lewkowski's testimony did he make any statement that related to the specific facts of the case. During closing argument, the prosecution advised the jury to "[t]hink about Sergeant Lewkowski's testimony about how things, how cocaine is moved on the streets." (Jury Trial Tr. II at 152.) The prosecution referred back to Lewkowski's testimony only briefly, and that testimony related to statements that provided context to the jury about cocaine trafficking. Neither the prosecutor nor the trial judge instructed the jury to consider Lewkowski's testimony as substantive evidence of guilt. For these reasons, the omission of an instruction that the jury could not use the drug profile evidence as substantive evidence of guilt did not "by itself infect[] the entire trial [so] that the resulting conviction violate[d] due process." *Cupp*, 414 U.S. at 147.

**C. Other Evidence of Guilt**

Petitioner's third objection argues that because his name was not on the lease of the apartment the drugs were found in, nor on his person, there was no evidence to convict him other than the drug profile evidence, which was used as evidence of guilt and caused him extreme prejudice. (Objections 2, ECF No. 48.) The Court disagrees.

Although Petitioner's name was not on the lease, the state presented evidence that Petitioner kept his personal belongings in the apartment (Jury Trial Tr. I at 124) and that Petitioner was staying in a bedroom in the apartment (*id.* at 133). Caseidra Brown, the father of Petitioner's children, and the person whose name the lease of the apartment was in, testified that she did not put drugs in the apartment. She also testified that only herself, her children aged 8 years old and younger, and Petitioner had access to the apartment. (*Id.* at 134-35.) Moreover, contrary to Petitioner's assertion, drugs were found on Petitioner's person when he was arrested. (Jury Trial Tr. II at 16.) The jury had circumstantial evidence in front of it to conclude beyond a reasonable doubt that the drugs belonged to Petitioner. And for the reasons stated above, the Court finds that drug profile evidence was not introduced as substantive evidence of guilt, but rather as background evidence to educate the jury on the typical characteristics of cocaine trafficking. Accordingly, this objection is meritless.

**D. 404(b) Evidence**

Petitioner's last objection states simply, "Petitioner also objects to 404(b) evidence of a drug case when someone testifies that the Defendant use[d] to sell them drugs.

'Unfair.'" This objection does not indicate how the magistrate or state court judge erred. "The filing of . . . conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Drew v. Tessmer*, 36 F. App'x 561, 561 (6th Cir. 2002). Accordingly, the Court need not consider this objection. And even if the Court were required to consider it, the Court would agree with and adopt the magistrate judge's determination that Petitioner failed to show that his constitutional rights were violated by the trial court's evidentiary rulings.

### E. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (internal quotation marks omitted). The Sixth Circuit has disapproved the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Upon review, the Court finds that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.

## III.

For the reasons stated above,

**IT IS HEREBY ORDERED** that the Magistrate Judge's August 27, 2015 Report and Recommendation is **APPROVED and ADOPTED (**ECF No. 47) as the Opinion of this Court. Petitioner's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner's objections to the R&R (ECF No. 48) are **OVERRULED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

Judgment will enter consistent with this Opinion and Order.

Dated: March 21, 2016                                          /s/ Robert Holmes Bell
                                                               ROBERT HOLMES BELL
                                                               UNITED STATES DISTRICT JUDGE